UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

FABIAN SULTAN,

    Plaintiff,

v.

MEDICREDIT, INC.

    Defendant.
_____/

CASE NO.: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Fabian Sultan ("Fabian"), by and through their undersigned counsel, hereby files this Complaint against Defendant, Medicredit, Inc. ("Medicredit"), and states as follows:

## INTRODUCTION

1. This is an action for damages brought by an individual consumer based on Medicredit's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Florida consumer Collection Practices Act, Fla. Stat. §§ 559.55 et seq. ("FCCPA").

## PARTIES

2. Fabian is a natural person who resided in Hallandale Beach, Florida, at all times relevant to this action.

3. Medicredit is a Missouri corporation that maintained its principal place of business in Columbia, Missouri, at all times relevant to this action.

1

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Fabian's claims under the Florida Consumer Collection Practices Act, Fla. Stat. ("FCCPA"), § 559.55, et seq., because those claims share a common nucleus of operative facts with Fabian's claims under the FDCPA. S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

7. Before Medicredit began contacting Fabian, it and Fabian had no prior business relationship and Fabian had never provided express consent to Medicredit to be contacted on his cellular telephone.

8. Medicredit regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

9. The principal source of Medicredit's revenue is debt collection.

10. Medicredit is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

11. As described, *infra*, Medicredit contacted Fabian to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. Fabian is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. Within the past twelve months, and before, Medicredit has been calling Fabian on Fabian's cellular phone ending in -6772 in connection with the collection of a debt using an automatic telephone dialing system ("ATDS").

15. When Fabian would answer the calls, there would be a pre-recorded message before being connected to a live representative from Medicredit.

16. When Fabian would answer the calls, he would hear a slight pause before being connected to a live representative from Medicredit.

17. When Fabian would answer the calls, he would hear a clicking sound before being able to speak to a live representative from Medicredit.

18. Shortly after the calls began, Fabian advised Medicredit he was unemployed, so he could not pay the debt.

19. In addition, Fabian communicated his desire that Medicredit cease calling him.

20. Despite this communication, Medicredit continued to call Fabian on his cellular phone.

21. Fabian repeatedly begged Medicredit to cease calling him; nevertheless, Medicredit continued to call Fabian on his cellular phone.

22. Medicredit's collection efforts, including but not limited to its telephone calls, caused Fabian emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

23. Medicredit's collection efforts also intruded upon Fabian's privacy.

24. In addition, each time Medicredit placed a telephone call to Fabian, Medicredit occupied Fabian's telephone number such that Fabian was unable to receive other phone calls at that telephone number while Medicredit was calling him.

25. Medicredit's telephone calls also forced Fabian to lose time by having to tend to Medicredit's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

26. Fabian re-alleges and incorporates by reference Paragraphs 7 through 25 above as if fully set forth herein.

27. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

28. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

29. The likely effect of Medicredit's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Fabian.

30. Medicredit violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Fabian in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

31. Fabian re-alleges and incorporates by reference Paragraphs 7 through 25 above as if fully set forth herein.

32. Medicredit violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT THREE

### Violation of the Telephone Consumer Protection Act

33. Fabian re-alleges and incorporates by reference Paragraphs 7 through 25 above as if fully set forth herein.

34. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

    > Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

    137 Cong. Rec. 30,821 (1991).

35. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

36. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

37. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *Smith v. MarkOne Fin., LLC*, 2015 WL 419005, *2-3 (M.D. Fla. Feb. 2, 2015); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

38. Medicredit used a telephone dialing system with predictive dialer functionality to place calls to Fabian on his cellular telephone.

39. The TCPA provides, in part:

    (b)    RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

       (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

          (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

       * * *

          (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

    47 U.S.C. §§ 227(b)(1)(A)(iii).

40. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made.

*See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

41. Fabian was the "called party" in each telephone call Medicredit placed to Fabian's cellular telephone.

42. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

43. Medicredit violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Fabian on his cellular telephone without Fabian's prior express consent or after such consent had been revoked.

44. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

45. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

46. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015

7

WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

47. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

48. Medicredit voluntarily placed telephone calls to Fabian's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

49. Medicredit's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT FOUR

### Violations of the Florida Consumer Collection Practices Act

50. Fabian re-alleges and incorporates by reference Paragraphs 7 through 25 above as if fully set forth herein.

51. At all times relevant to this action, Medicredit is subject to and must abide by Florida law, including the FCCPA, Fla. Stat. § 559.72.

52. Medicredit is a "debt collector" as that term is defined in the FCCPA, Fla. Stat. § 559.55(7).

53. Fabian is a "consumer" as defined by the FCCPA and is a person whom the act was intended to protect, FCCPA, Fla. Stat. § 559.55(2).

54. Medicredit attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(1).

55. Medicredit willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Fabian with such frequency as can reasonably be expected to harass Fabian, or engaging in other conduct which can reasonably be expected to abuse or harass Fabian.

## JURY DEMAND

56. Fabian demands a trial by jury.

## PRAYER FOR RELIEF

57. Fabian prays for the following relief:

   a. Judgment against Medicredit for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. An order enjoining Medicredit from placing further telephone calls to Fabian's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   c. Judgment against Medicredit for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Medicredit made in violation of the TCPA.

   d. Judgment against Medicredit for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

   e. For such other legal and/or equitable relief as the Court deems appropriate.

[SIGNATURE ON FOLLOWING PAGE]

RESPECTFULLY SUBMITTED,

Date: November 10, 2017          By:     /s/ John P. Murray

*Of Counsel*
John P. Murray, Esq.
Florida Bar No. 975818
Email: john@johnpmurray.com
HYSLIP & TAYLOR, LLC, LPA
2655 Lejeune Rd., Suite 700
Coral Gables, FL 33134
Phone: 305-779-4818
Facsimile: 305-779-4819

Attorney for Plaintiff, Fabian Sultan